# Leeds *versus* Commonwealth.

1. A subsequent fraudulent sale by an assignee has no bearing upon the question of the delivery of the assignment.

2. On a scire facias upon a recognisance of a sheriff for the non-execution of a writ of fieri facias the sheriff pleaded that the day before the execution was placed in his hands the defendant in the execution had made a general assignment. Plaintiff replied that the assignment was not delivered before the day the sheriff received the writ and that it was void because made with the intention to defraud creditors. At the trial to show the alleged fraud evidence was admitted as to the manner in which a sale of the assignee was conducted. *Held*, that this evidence was admissible on the question of fraud, but it had no bearing upon the question of the delivery of the deed and its admission for that purpose was erroneous.

3. Evidence which has any bearing on the question at issue is competent and the order in which it may be given is in the discretion of the court.

February 8th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1876, No. 171.

This was a scire facias issued by the Commonwealth to the use of William E. Peet, upon the official recognisance of William R. Leeds, late sheriff, and his sureties.

Peet obtained a judgment against Joseph Lauferty & Son, at Nisi Prius, for $1993.30, on the 23d of September 1871, and on the same day issued a fi. fa. thereon, which was placed in the hands of

[Leeds *v.* Commonwealth.]

the sheriff on the morning of that day. The plaintiff averred that although there were sufficient goods on the premises of Lauferty & Son to satisfy the judgment, the sheriff had refused to levy thereon, and had made a return of *nulla bona* to the writ.

The defendants pleaded, that on the 22d of September 1871, Lauferty & Son had executed and delivered a deed of general assignment to Levi S. Gans for the benefit of creditors, which was an act of bankruptcy, and that subsequently, upon petition of certain creditors, the said firm were declared bankrupts, and that by reason of this assignment and the said proceedings in bankruptcy, the Laufertys were divested of all title to the goods on the day the execution issued.

The plaintiff replied that the Laufertys had not executed and delivered a deed or made a transfer of their goods when the execution issued, and that said assignment when made was executed with the intent to hinder and defraud creditors and to prevent the plaintiff from recovering the amount of his judgment out of the goods of the firm.

These replications were traversed by defendant, and issue joined.

At the trial, the fi. fa. having been given in evidence, it was admitted by the defendants that the goods in the store of the Laufertys were sufficient to cover and pay the money endorsed on said writ.

The defendants then offered evidence of the execution and delivery of the deed of assignment, in substance as follows: that the deed was purposely prepared by the Laufertys on the day before Peet was to get his judgment, and was by them delivered to their attorney, Mr. Juvenal, to be by him given to Levi S. Gans, the assignee. The deed was acknowledged before an alderman, and was then delivered to Mr. Brown, in the office of Mr. Juvenal, to be handed to Mr. Gans, who called at the office of Mr. Juvenal on the 22d of September 1871, when Mr. Brown wrote out the acceptance of the assignment, and Mr. Gans signed it and took the paper with him. The deed was recorded on the 17th of October 1871.

In rebuttal, A. M. Burton, Esq., the counsel of Peet, testified that he went to the office of Mr. Juvenal on the 26th of September, and saw the deed of assignment, and that the signature of Mr. Gans was not attached thereto. Two other witnesses also testified that they had called on Mr. Gans on or after the 23d of September, to one of whom he said he had concluded to accept the deed, and to the other that he had not accepted it.

It appeared that the assignee, Gans, took possession of the stock of goods in the store, filed an inventory thereof October 11th 1871, and sold the same at public auction on the 1st of November following. Subsequently to these proceedings some of the creditors of Lauferty & Son had them declared bankrupts, the cause of the

bankruptcy alleged in the petition being the making of the general assignment on the 22d of September.

On the trial the assignee in bankruptcy was offered by the plaintiff to prove the fraudulent acts of Gans and the Laufertys; to show what was done by Gans at the assignee's sale; that the goods were sacrificed; that the stock was sold in large lots, so that it would not bring good prices; that goods were knocked down to a party who was buying them in for one of the Laufertys, &c.

The defendants objected to any evidence "as to the price at which the goods were sold at the sale by the assignee, on the 1st of November, or as to the supposed value of the goods in the store, or as to anything that occurred at the sale on that date, inasmuch as it has been admitted, and has been so noted, that the goods at the store at the date of the assignment were of sufficient amount and value to cover and pay the moneys endorsed upon the execution, and no misconduct by the assignee or his agents after the date, execution and delivery of the assignment, can be given in evidence to invalidate a general assignment duly executed and delivered."

The court, Ludlow, P. J., overruled the objection and admitted the evidence, and defendants took an exception.

The court in the charge to the jury, inter alia, said:—

"Of course, if no assignment was made; if the paper, although having been written in form as an assignment, was never delivered, the title to the goods never passed out of the Laufertys, then the sheriff of the county would be responsible for not having levied upon them.

["For just at this point I may say, that the proceedings in bankruptcy, as in evidence, can in no way affect the present case. I instruct you, therefore, as a matter of law, that the adjudication in bankruptcy relating back for any purpose, to whatever day you please, can have no effect upon the responsibility of the sheriff in this case. So that you will discharge the matter of the bankruptcy proceedings in the United States court altogether from your mind.]

["Well, then, the plaintiff goes a step further and introduces other evidence of the transactions attending the sale itself, as bearing upon the question of fact, and the whole transaction generally. It is contended that the sale was a mere fraudulent sale; that there were few bidders; that prices were small; that the goods sold in a lump, and that they were bought in by a man named Sawyer, for Emanuel Lauferty, the son. This evidence, again, is rebutted by the testimony, for the sheriff, of Mr. Freeman, as to the bona fides of the sale; as to there being a proper offer made of the goods, and that the sale had been previously advertised by handbills and otherwise; proving that it was well attended and a fair one.

"Mark especially that that testimony will bear upon this case on the question of the execution and delivery of this assignment, or a delivery purporting to have been made."]

[*Leeds v.* Commonwealth.]

The verdict was for the plaintiff; for the Commonwealth, $80,000, amount named in the recognisance; for Peet, $2433.94.

The defendants took this writ, and assigned for error, 1, the admission of the evidence of plaintiff, noted in exception above; 2 and 3, the portions of the charge in brackets.

*George Junkin* and *Charles Gilpin,* for plaintiffs in error.—No misconduct by the assignee or his agents after the date, execution and delivery of the general assignment could be given in evidence to invalidate the general assignment duly executed and delivered. It was clearly erroneous to charge the jury that this testimony had a bearing upon the question of the execution and delivery of the assignment.

It might throw some light upon the allegation of fraudulent intent on the part of the assignors, but it is difficult to conceive what bearing it had on the question of actual delivery.

The execution, acknowledgment and recording of the deed were conclusive evidence of the delivery: Kille *v.* Ege, 29 P. F. Smith 15 ; Heeter *v.* Glasgow, Id. 79.

A voluntary assignment for the benefit of creditors is an act of bankruptcy *eo instante,* when the deed is executed; and this deed was executed one day before the fi. fa. issued; and the title of the assignee in bankruptcy related back to that day.

*Frank P. Prichard* and *Richard P. White,* for defendant in error.—The issue raised being as to the bona fides of the assignment, it was competent for the plaintiff to give evidence of all the circumstances attending its execution and the acts of the assignee, at whatever time made or done, which tend to prove fraud : Helfrich *v.* Stem, 5 Harris 143, 151.

The fact that at the assignee's sale the goods were sold in large quantities, at one-third their value, to a son of one of the assignors, was an important link in the chain of evidence, and plaintiff had the right to give evidence of it to support his theory of the case: Stafford *v.* Henry, 1 P. F. Smith 514; Thompson *v.* Franks, 1 Wright 327 ; Rodgers *v.* Stophel, 8 Casey 111.

The title of the assignee in bankruptcy did not relate back to the act of bankruptcy, but to the date of the proceedings in bankruptcy; and if before the filing of a petition therein a creditor has acquired a lien, it is valid as against the assignee : Maris *v.* Duron, 1 Brewst. 428.

The question of delivery of a deed is always one of *intention,* and in the present case was directly dependent upon the proof of the bona fides or mala fides of the parties to it.

The question being one of fraud, all the acts of the assignor and assignee were proper matters of evidence, and had a direct bearing

[Leeds *v.* Commonwealth.]

on the question of delivery: Powers *v.* Russell, 13 Pick. 69; Dayton *v.* Newman, 7 Harris 194.

Mr. Justice SHARSWOOD delivered the opinion of the court, February 19th 1877.

There were substantially only two issues of fact before the jury. First, whether the general assignment by the Laufertys to Gans, dated September 22d 1871, was delivered on that day; and, second, whether it was intended to hinder, delay and defraud Peet, a creditor of the Laufertys. No point was made below, nor has any assignment of error been filed which raises the question whether there was sufficient evidence of actual fraud to submit to the jury. We must assume that there was. If so, we see no error in the admission by the learned judge as to the manner in which the sale by the assignee was conducted, the prices brought, and that the goods were bid in for a son of one of the assignors. It certainly had a direct bearing on the question of fraud, though it might be insufficient of itself to prove it. If no subsequent or further evidence was given on this point, the judge should have been asked so to charge. No man can be required to prove his case *uno flatu.* He must proceed by steps, and especially is this true in questions of fraud. Whether he begins at one end or the other, or jumps at once in *medias res,* is a mere question of order on which we never reverse. If, therefore, the evidence offered had any bearing upon the question of fraud, it would have been error to have excluded it. The court could not be called upon to say, at that stage of the trial, whether, standing by itself without any further evidence, it was sufficient to go to the jury. Nor do we find any error in that part of the charge complained of in the second specification. The subsequent proceedings in bankruptcy had no relevancy to the issue before the jury. They neither tended to prove that the deed was delivered on the day of its date, nor that it was not in fraud of creditors. But in that part of the charge which forms the subject of the third specification we think there was material error. The fraudulent sale by the assignee had no bearing upon the bare question of the delivery of the assignment. The sale went to show that it had been delivered at some time, which, however, was not denied, but that it had not been delivered before Peet's execution was placed in the hands of the sheriff. Surely the fraud or irregularities in conducting the sale threw no light whatever properly upon that question; yet the learned judge instructed the jury to "mark especially" that it did so bear, though he did not explain how or why. We think this instruction was calculated to mislead the jury, and the third assignment of error is therefore sustained.

Judgment reversed, and *venire facias de novo* awarded.